IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMERON'S HARDWARE, Inc., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 08-15 |
| | : | |
| INDEPENDENCE BLUE CROSS, et al. | : | |

**MEMORANDUM**

Juan R. Sánchez, J.                                                                                                          July 28, 2008

Independence Blue Cross (IBC) and the Commonwealth Defendants ask this Court to punish Cameron's Hardware, the Lobb family, and their attorney for relentlessly pursuing baseless litigation. Because I find Plaintiffs and their attorney unreasonably continued this case, I will impose sanctions.

IBC and Joseph A. Frick move for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 against Cameron's Hardware, Inc., Frank Lobb, Jeffrey Lobb, and Kristin McDermott, and against Plaintiffs' attorney, Lawrence M. Otter, Esquire, seeking $33,928.05 in fees and $1,508.86 in costs. The Commonwealth of Pennsylvania Departments of Health and Insurance move for sanctions under 28 U.S.C. § 1927 against Mr. Otter and seek $6,352.50 in fees. Plaintiffs and Mr. Otter respond they reasonably believed they were entitled to a clarification of their rights under ERISA[1] and were pursuing a valid cause of action. I find Plaintiffs and Mr. Otter continued to pursue this baseless cause of action in bad faith, and, considering the *Doering*[2] factors presented, impose sanctions of $33,928.05 in fees and $1,508.86 in costs against Cameron's Hardware, Frank

---

[1]Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.

[2]*Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191 (3d Cir. 1988).

1

Lobb, Jeffrey Lobb, and Mr. Otter for Independence Blue Cross,[3] and impose sanctions of $6,352.50 against Mr. Otter for the Commonwealth of Pennsylvania Departments of Health and Insurance.

**FACTS**

In the late 1990s, after IBC allegedly denied subscriber Sandra Lobb coverage for inpatient alcohol rehabilitation, Lobb's family members, including husband Frank Lobb and children Jeffrey Lobb and Kristen McDermott, attempted to pay several providers for the care, but were refused.[4] Sandra Lobb never obtained the care and, on February 1, 1999, died from kidney failure caused by cirrhosis of the liver. As a result, Plaintiffs claim, they were made aware IBC subscribers could be denied the ability to pay for their own health care whenever IBC refused to pay for care defined as a "covered service."

On February 1, 2001, Kimberly P. Johnson, the personal representative of the estate of Sandra Lobb, filed a complaint against IBC in the Court of Common Pleas of Chester County, Pennsylvania, primarily alleging that after denying coverage for inpatient alcohol rehabilitation, IBC denied access to the treatment even when Lobb's family offered to pay for these services. The court granted IBC's motion for summary judgment, having found no evidence a request for inpatient alcohol rehabilitation had ever been made by Sandra Lobb or anyone on her behalf, and no evidence a residential treatment facility had refused payment from Lobb or her family members. *See Johnson*

---

[3] I do not impose sanctions against Plaintiff McDermott or in favor of Defendant Frick because McDermott withdrew on February 13, 2008, and Plaintiffs voluntarily dismissed Frick on February 8, 2008, within 21 days of January 31, 2008, when Defendants served a copy of their motion for sanctions on Plaintiffs.

[4] The record shows in 1997 Lobb completed an intensive outpatient alcohol rehabilitation program, covered by IBC. As to inpatient alcohol rehabilitation, the record shows no denial of such care nor that a request for such care was made by Sandra Lobb or her physicians.

2

*v. Independence Blue Cross*, No. 01-01070 (Ct. Com. Pl. Apr. 12, 2004). The court also found neither IBC's provider contracts nor Sandra Lobb's benefit plan would have produced such a result. The court found as long as the provider informs the patient services will not be covered by the insurer, it would then be up to the patient whether to accept services and become responsible for payment. *See id.* The court found nothing in the provider's contract prohibited payment by the patient. *See id.*

Plaintiff, represented by Mr. Otter,[5] appealed, and on November 4, 2005, the ruling was affirmed by the Pennsylvania Superior Court, which substantially incorporated with approval the trial court's language and reasoning in its decision. *See Johnson v. Independence Blue Cross*, 890 A.2d 1113 (Pa. Super. Nov. 4, 2005). The Superior Court noted the action underlying the appeal arose from the death of Lobb, and concluded Plaintiff "[had] not present[ed] sufficient evidence to prove that any residential alcohol treatment facility had *ever* refused an offer of payment from the decedent, or anyone acting on her behalf, specifically due to such facility's contract with [IBC]." *Johnson v. Independence Blue Cross*, 890 A.2d 1113 (emphasis in original). The Superior Court further observed:

> Appellant claims that [IBC's] contract with various inpatient alcohol treatment facilities prevented those providers from accepting payment from patients themselves once the treatment being sought was deemed 'not medically necessary' by [IBC]. However, Appellant presented *no evidence* from any representative of any such alcohol treatment facility to confirm this claim regarding that specific facility's contract with [IBC]. Nor did Appellant provide any evidence from [IBC] which indicated that any contract which the company entered into with an inpatient alcohol treatment facility prevented such provider from accepting payment directly from a patient.

---

[5]Mr. Otter was not involved in the Chester County action, but represented the Plaintiffs in the appeal to the Pennsylvania Superior Court and in the two actions filed in this Court.

3

*Johnson*, 890 A.2d 1113 (emphasis in original). The Superior Court noted Kristen McDermott claimed to have contacted numerous facilities which all denied treatment due to IBC's alleged contractual interference, but admitted she did not remember which facilities she had called and could not confirm why they had allegedly declined to provide treatment. *Id.* The Superior Court held the trial court had correctly determined the language of IBC's contracts was unambiguous and did not prohibit payment by the insured. "As such, it belies common sense that such statutory language, enacted to protect patients, actually prohibits them from obtaining treatment via voluntary self-payment." *Id.* The Superior Court finally noted the Appellant simply had not produced any actual evidence the language of IBC's contracts with providers operated to preclude patients from independently paying for treatment. *Id.*

On May 27, 2005, while the state court action was pending on appeal, Kimberly P. Johnson, as personal representative of the estate of Sandra Lobb, and Kristen McDermott, with Mr. Otter's representation, filed a complaint in this Court before the Honorable Lawrence F. Stengel, United States District Judge, against IBC, the Commonwealth of Pennsylvania Departments of Health and Insurance, and the Chester County Hospital. Plaintiffs sought a declaration the state-mandated "hold harmless" language[6] in contracts between medical insurers and medical providers interfered with an individual's ability to pay providers and access medical care.[7] The Court dismissed the case because

---

[6] 28 Pa. Code § 9.722(e)(i)-(iii).

[7] Regarding IBC's hold harmless provision, the Court explained:
> The hold harmless provision is a part of every contract between IBC and medical providers within the Commonwealth of Pennsylvania and is for the benefit of the insured. The provision guarantees that person's insured by IBC do not have to pay for services rendered in the event that IBC becomes insolvent. Further, the provision may be designed to prevent medical providers from being paid twice for services rendered; once from IBC and once from the insured.

4

it found the two-year statute of limitations beginning in 1997 barred the case from being brought in 2005. *Johnson v. Koken*, 2005 WL 3470651 at *3 (E.D. Pa. Dec. 15, 2005). The Court explained the statute of limitations began running when the alleged denial of the ability to pay for Sandra Lobb's medical services occurred in 1997, not in 2004 when Plaintiffs discovered the "hold harmless" clause in IBC's contracts with medical providers.[8] *Id.*

The Court further determined Plaintiff McDermott's claims should be dismissed because she did not meet any of the requirements for standing in the case:

> No facts have been plead that an invasion of her ability to freely contract for medical services is either concrete or imminent. McDermott is no different from any other Pennsylvania resident insured by IBC. Although she may be afraid IBC will treat her in the same manner as they have allegedly treated her mother, that fear is insufficient for standing in this case. No facts have been plead to give this court any reason to believe that McDermott can not freely enter into a contract with any medical service provider and individually pay for all services requested. The fact that Mrs. Lobb may have been prevented from individually contracting for medical services is not enough to give McDermott standing in this case. Mrs. Lobb, not McDermott, claims a denial of coverage and an interference with her ability to individually pay for medical services in 1997.

*Johnson v. Koken*, 2005 WL 3470651 at *3 (E.D. Pa. Dec. 15, 2005).

On September 7, 2007, the Third Circuit Court of Appeals affirmed the dismissal because the claims were untimely and McDermott lacked standing. *Johnson v. Independence Blue Cross*, 247 Fed. Appx. 340 (3d Cir. 2007). The Court of Appeals also imposed sanctions of $7,456.50 in attorneys' fees after IBC argued the case was frivolous.

---

*Johnson v. Koken*, 2005 WL 3470651 at *1 (E.D. Pa. Dec. 15, 2005).

[8]The Court also concluded the claims were likely barred by the *res judicata* doctrine and because the same claims had been raised in state court, where they were decided and affirmed. *Johnson*, 2005 WL 3470651 at *3. Comparing the claims before it with the claims brought in the prior state court action, the Court noted the parties and facts were identical, and the issues were "strikingly similar." *Id.* at *4.

5

In spite of this history, the sound reasoning provided by four courts, and the sanctions imposed by the Court of Appeals, on January 3, 2008, Plaintiffs filed yet another action in this Court. They requested "de novo review"[9] and a declaratory judgment on the question of whether an insured is free to pay network providers for care whenever the health insurance companies, Defendants Aetna or IBC, refuse to approve and pay for the care. Again Plaintiffs centered their claim, phrased in slightly different terms, around the state-mandated "hold harmless" clause, alleging the clause forbad providers from seeking compensation from an insured if an insurer failed to compensate providers. Plaintiffs alleged this resulted in a provider being unable to bill or hold an insured responsible for payment if the insurer did not pay for a covered service, and an insured could not pay the provider. Consequently, Plaintiffs reasoned, the insured's access to health care was restricted.

Although this time Plaintiffs dressed the claim as an ERISA action, contending ERISA required Aetna and IBC as ERISA providers to disclose the answer Plaintiffs sought, the claim involved the same "hold harmless" clause issue and argument presented previously in this Court on May 27, 2005, and in the state court on February 1, 2001. In addition, although a number of new Plaintiffs were added[10] and Johnson, as representative of Sandra Lobb's estate, was omitted, the facts presented here were essentially the same set of facts presented in the prior two actions.

---

[9] That Plaintiffs asked this Court for "de novo review" further demonstrates they realized these claims had already been litigated.

[10] Cameron's Hardware and Frank Lobb brought this action alleging they have a fiduciary duty to their employees. On October 19, 2000, Frank Lobb purchased Cameron's Hardware and provided employees with an IBC HMO health care plan. On March 1, 2003, Cameron's Hardware replaced its IBC plan with a similar plan from Aetna. Jeffrey Lobb brought this action as a Cameron's Hardware employee enrolled in Cameron's Hardware's health care plan. McDermott, a public school teacher, was the only Plaintiff who had also been involved in the prior federal action, included here initially because of her participation in an IBC plan through her employer, the Oxford Area School System.

Unlike McDermott, Cameron's Hardware, Frank Lobb, and Jeffrey Lobb chose not to withdraw their claims although they were provided the same notice when IBC served all Plaintiffs with a copy of its motion for sanctions on January 31, 2008, reminding Plaintiffs the filing of their complaint in this Court constituted the fifth court that would be considering the same claim.[11] Because McDermott withdrew her claims and all Plaintiffs voluntarily withdrew their claims against Frick within the 21-day safe harbor provision of Rule 11(c)(1)(A), sanctions will not be imposed against McDermott or in favor of Frick.

Oral argument on Defendants' motions to dismiss was held on April 22, 2008. When asked to explain why Plaintiffs continued to seek an answer when the state court had already found nothing prohibited an insured from paying a provider herself, Plaintiffs responded they had been told an insured could pay the provider, but they were perplexed as to how the insured could pay when the provider could not bill an insured, and sought an answer to resolve that issue. Plaintiffs, however, presented no evidence an insured could not pay a provider because a provider could not bill the insured nor evidence a provider ever refused payment by an insured under any circumstance.

At oral argument, I had informed parties I was inclined to grant the motions for sanctions and ordered a hearing on the issue. Immediately following oral argument on the motions to dismiss, Plaintiffs filed a motion for reconsideration of sanctions, stating they had received from Aetna the clarification they were seeking, and, now having the information, they considered the matter settled, and requested the case be terminated. Nevertheless, nothing was presented to show parties had

---

[11] In 1993, Rule 11 was amended to require a party who moves for sanctions to serve the motion on the opposing party, and the motion "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A).

formally settled or that Plaintiffs had withdrawn their claims. I therefore dismissed the case on April 28, 2008, on the grounds Plaintiffs lacked standing, this Court lacked subject matter jurisdiction, and the claims were time-barred.

Plaintiffs subsequently filed an additional brief on the sanctions motion. Plaintiffs were also provided ample time to prepare testimony and any additional evidence for the hearing on July 8, 2008. At the hearing, however, only Frank Lobb presented testimony and no additional evidence was submitted.

## DISCUSSION

Rule 11 authorizes the Court to impose "sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose, e.g. 'To harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (quoting *Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991)). The standard for imposing sanctions under Rule 11 is one of "reasonableness under the circumstances." *Martin*, 63 F.3d at 1264 (quoting *Landon*, 938 F.2d at 453 n.3). This requires a determination of "whether, at the time he filed the complaint, counsel . . . could reasonably have argued in support' of his legal theory." *Pensiero*, 847 F.2d at 96 (quoting *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 70 (3d Cir. 1988)). "To comply with this standard, counsel 'must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'" *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994) (quoting *Pensiero*, 847 F.2d at 94). "The Third Circuit has utilized Rule 11 to filter out frivolous pleadings that are legally unreasonable or that lack factual foundation." *Becker v. Sherwin Williams*, 717 F.Supp. 288, 297 (D.N.J. 1989) (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir.

1985)). "Bad faith is not required." *Martin*, 64 F.3d at 1264 (citing *Pensiero*, 847 F.2d at 94).

Rule 11 holds that if an offending document is filed, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Section 1927 of Title 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "This section is not limited by, but exists in addition, to other sanctioning regimes such as Rule 11." *Murphy v. Housing Authority and Urban Redevelopment Agency of City of Atlantic City*, 158 F.Supp.2d 438, 445 (D.N.J. 2001) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Section 1927, unlike Rule 11, requires bad faith. *Martin*, 63 F.3d at 1264 (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987). In addition, section 1927 authorizes only the imposition of costs and expenses that result from the particular misconduct sanctioned. *Id.* at 1265 (citing *Eash*, 757 F.2d at 560).

"Before assessing attorneys' fees under § 1927, a District Court should find that the attorney to be so sanctioned acted willfully, and identify the conduct which constituted bad faith." *Murphy*, 158 F.Supp.2d at 446 (citing *Baker Industries, Inc. v. Cerberus Ltd.*, 764 F.2d 204, 209 (3d Cir.

1985). Bad faith can be shown through "the intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). "When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied." *Loftus v. Souteastern Pennsylvania Transp. Auth.*, 8 F.Supp.2d 458, 461 (E.D. Pa. 1998), *aff'd*, 187 F.3d 626 (3d Cir. 1999), *cert. denied*, 528 U.S. 1047.

Defendants argue sanctions under Rule 11 and § 1927 are warranted because Plaintiffs, along with Mr. Otter, continued to litigate an issue, without any legal or evidentiary basis, previously litigated and lost in both state and federal court. Defendants further argue bad faith can be found because Mr. Otter willfully brought a third action on the issue of the "hold harmless" clause language in an attempt to harass Defendants, it was obvious Mr. Otter failed to perform diligent research into his claims, it was misrepresented to the Court the issue of the "hold harmless" clause was yet undecided, and Mr. Otter failed to provide any evidentiary support for his claims. Defendants Commonwealth Departments of Health and Insurance additionally argue the fact that Plaintiffs claim they were finally able to resolve their claim through Aetna without any involvement by the Commonwealth demonstrates the Commonwealth was not a necessary party to the litigation and there was no reason for it to be sued other than for Plaintiffs' purpose of causing harassment and vexation. Plaintiffs and Mr. Otter fail to rebut Defendants' position the cause of action lacked any legal or evidentiary basis. Plaintiffs' briefs on the issue of sanctions simply reiterate their Complaint they wanted clarification of an insured's right to pay for and access health care and that they were entitled to such clarification under ERISA. They do not provide any additional argument or evidence to support they had a reasonable basis to bring their claim. In fact, what additional evidence was

presented at the hearing through Lobb's testimony further strengthens Defendants' position. I must therefore agree with Defendants and impose sanctions accordingly.

Reviewing the history of this case, and Mr. Otter's close involvement in it, it is difficult to imagine a better example of frivolous, vexatious, and unreasonable multiplicity of proceedings or the continued pursuit of a baseless claim in the face of several irrebuttable defenses. Plaintiffs and Mr. Otter again provided no evidentiary support for their claim, provided no legal basis for their claim, and ignored the clear rulings of four prior courts interpreting the contract language, explaining the claim was time-barred, and concluding McDermott lacked standing. In their Complaint filed here, Plaintiffs admitted that it was when Sandra Lobb was allegedly denied care in the late 1990s that they first believed an insured could be denied the ability to pay for her own health care. Pl. Compl. 8. They were also informed in the prior opinion issued by this Court in 2005 that the statute of limitations began running in 1997 when the denial occurred, not when Plaintiffs allegedly discovered the specific language of the "hold harmless" clause in 2004. Plaintiffs therefore knew that at most even if the four-year breach of contract statute of limitations applied, the limitations period began running in 1997, and this action should not have been brought in 2008.

At the hearing on the motion for sanctions, Plaintiffs failed to provide any evidence of an instance when they had been unable to access, or been denied, health care when a provider could not bill even when they had offered to pay for the care. Frank Lobb, in fact, testified an individual has the right to care and the provider must provide it, but because the provider has no requirement to bill, it ends up providing health care for free. Lobb further testified neither he nor any of his employees had ever sought to pay for treatment that was refused by a health care provider, and they had not needed the Commonwealth for satisfaction or clarification because they could have received their

answer from any of the Defendants. Lobb stated he had reviewed the prior opinion issued by this Court and had understood the Court's holding there was nothing unconstitutional about the "hold harmless" clause in IBC's contract, but testified he had brought this suit because he wanted clarity.

The prior opinion issued by this Court carefully explained why Plaintiff McDermott lacked standing. Plaintiffs Cameron's Hardware, Frank Lobb, and Jeffrey Lobb in this action lacked standing for the same reasons. Plaintiffs again failed to plead any facts to suggest an injury had occurred, or that what injury they could suffer was anything but conjectural, hypothetical, or merely speculative. *See Taliaferro v. Darby Twp. Zoning Bd.*, 459 F.3d 181, 188 (3d Cir. 2006) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). They again failed to plead any facts to give this Court any reason to believe they or anyone could not freely pay providers for all services insurers did not approve. No allegations suggested Plaintiffs were denied approval by Aetna or IBC for care they sought, or that they sought to pay for care and were denied that care. Nothing suggested access to health care was in fact restricted or that a denial of access to health care was imminent. Plaintiffs simply failed to show any facts contrary to any of the prior court's findings the "hold harmless" clause language unambiguously did not deter payment by the insured. I find Plaintiffs fully understood their lack of standing, but persisted in bringing this action. Rule 11 sanctions must therefore be imposed against Plaintiffs as well as their attorney to deter repetition of this conduct. *See* Fed. R. Civ. P. 11(c)(4).

Mr. Otter failed to show he had conducted any investigation of his claim or attempted to gather any supporting evidence. "An attorney's obligation to the court is one that is unique and must be discharged with candor and with great care." *Baker Industries*, 764 F.2d at 212. At the time Mr. Otter filed the Complaint on behalf of his clients, he had been informed four times previously his

claim had no basis in fact or law. Yet, he unreasonably brought the same claim without any additional law or evidence to support. He has shown nothing new since his filings in the prior court actions to support the same claim in spite of those courts' admonitions the claim lacked sufficient evidentiary or legal basis. A reasonable investigation of the facts and a competent level of legal research would have shown the numerous defenses to his claim, namely lack of standing, untimeliness, and claim preclusion. *See Simmerman*, 27 F.3d at 62. In the face of this, Mr. Otter continued to advocate his claim. "[W]here a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied." *Loftus*, 8 F.Supp.2d at 461.

The circumstances of this case require sanctions in accordance with Rule 11 and § 1927 because I conclude Plaintiffs' claims against Defendants were frivolous, legally unreasonable, and without factual foundation. *Cf. Loftus*, 8 F.Supp.2d 458 (sanctions affirmed by Court of Appeals in case where public employee brought a federal civil rights action alleging former employer and union conspired to deprive him of employment because attorney's continuing prosecution of claim following Court of Appeals's decision affirming dismissal of another employee's identical claim against the same employer was in willful bad faith and warranted sanctions under § 1927). Because this entire action could easily have been avoided, I also find Mr. Otter multiplied the proceedings unreasonably and vexatiously, caused needless increase in the cost of litigation, and his claim was brought in bad faith. Therefore, sanctions should be imposed against Plaintiffs under Rule 11 and against Mr. Otter under both Rule 11 and § 1927.

The imposition of sanctions must be governed by the principles announced in *Doering. See Jones v. Pittsburgh National Corporation*, 899 F.2d 1350, 1359 (3d Cir. 1990). "Where a district court decides to award a monetary sanction, such as attorney's fees, the total amount of such a

sanction (as well as the initial decision whether to impose such a sanction) should be guided by equitable considerations." *Doering*, 857 F.2d at 195 (citing *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1028 (2d Cir. 1979).

The starting point for determining reasonable attorney's fees is the lodestar calculation, which "is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." *Doering*, 857 F.2d at 195. The prevailing party bears the burden of establishing with satisfactory evidence, in addition to the attorney's own affidavits, the requested hourly rate meets this standard. *Washington v. Philadelphia County Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996). "We then consider whether the time charged is reasonable, excluding 'hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission' to his client." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 Fed.Appx. 93, 96 (3d Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). To challenge, Plaintiffs and Mr. Otter must state their grounds with "sufficient specificity." *See Bell v. United Princeton Props.*, 884 F.2d 713, 715 (3d Cir. 1989).

The court must then consider various mitigating factors in its calculation of the total monetary sanctions, including:

> (1) the impact of the monetary sanctions on the party or attorney against whom the sanctions are to be assessed, including the attorney's ability to pay;
> (2) whether the attorney is or will be the subject of any adverse press scrutiny as a result of the sanctions imposed by the court;
> (3) whether the attorney is or will be the subject of any disciplinary action; and
> (4) any evidence which would indicate the attorney will be deterred from future conduct in violation of Rule 11.

*Id.* at 195-197 (citations omitted). A footnote in *Doering* also lists the following mitigating factors a district court may consider: (1) the attorney's history of filing frivolous actions or alternatively, his or her good reputation; (2) the defendant's need for compensation; (3) the degree of frivolousness; (4) whether the frivolousness indicated a less sophisticated or expensive response; and (5) the importance of not discouraging particular types of litigation which may provide the basis for legislative and executive ameliorative action when the courts lack power to act. *Doering*, 857 F.2d at 197 n.6.

Here, at the hearing, Plaintiffs and Mr. Otter stipulated Defendants had met their burdens of establishing the reasonableness of the bills incurred, the appropriateness of the time expended, that the work was necessary, and the rates charged were the customary and usual rates charged in the industry and were based on the prevailing market rate. In connection with their request for fees and costs, both Defendants supplied affidavits supporting their claims for fees and costs. Plaintiffs and Mr. Otter did not challenge the amount of the fees and costs claimed by Defendants. Therefore, based on the evidence presented by Defendants, and in the absence of any challenge by Plaintiffs and Mr. Otter, I find the hourly rates requested and the time expended to be reasonable and accept Defendants' lodestar calculations.[12]

---

[12]IBC's attorneys William H. Lamb, Esquire, James C. Sargent, Jr., Esquire, Maureen M. McBride, Esquire, Susan C. Mangold, Esquire, and Joshua G. Villari, Esquire, respectively request hourly rates of $515, $360, $295, $280, and $240, supported by an affidavit stating the work performed was in accordance with prevailing rates charged in the community by attorneys of similar experience. IBC's counsel expended a total of 117.5 hours, itemized in a list according to attorney, identifying the task performed, and the amount of time spent on each task. IBC also submitted an itemized list of costs expended totalling $1,508.86. The Commonwealth's attorney, Barry N. Kramer, Esquire, requests an hourly rate of $330, supported by an affidavit attesting to its reasonableness. Kramer also submitted an itemized list of expended hours identifying the tasks performed and the number of hours spent on each. I find all requested fees and costs are reasonably related to the frivolous action here.

Having accepted Defendants' unopposed lodestar calculations, I must now consider any mitigating factors under *Doering*. During the hearing on sanctions, other than in the related prior federal action, Mr. Otter stated he had no other history of being imposed sanctions. He also stated he did not intend to pursue this litigation any further. The Court informed Mr. Otter it would need to consider any *Doering* factors to mitigate the lodestar calculation, but Mr. Otter stated the Court was correct he was offering no other evidence to mitigate the lodestar calculation.

In light of the history of this case, I find what little mitigating evidence was presented insufficient to reduce the lodestar calculation I have found reasonable. Although Mr. Otter was sanctioned in the prior federal action by the Court of Appeals in the amount of $7,456.50 for bringing a frivolous action, he and Plaintiffs continued to pursue their baseless claim. That they requested "de novo" review from me demonstrates they were fully aware their claim had already been litigated. I find under the circumstances an emphatic message needs to be sent to Plaintiffs and Mr. Otter. Balancing the equities and in light of the purpose to be served in the imposition of sanctions, I find the amounts requested by Defendants to be no greater than necessary to achieve the public policy objectives underlying Rule 11 and § 1927. *See Loftus*, 8 F.Supp. at 464. I therefore exercise my discretion and impose sanctions of $33,928.05 in fees and $1,508.86 in costs against Cameron's Hardware, Frank Lobb, Jeffrey Lobb, and Mr. Otter for Independence Blue Cross, and impose sanctions of $6,352.50 against Mr. Otter alone for the Commonwealth of Pennsylvania Departments of Health and Insurance.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMERON'S HARDWARE, Inc., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 08-15 |
| | : | |
| INDEPENDENCE BLUE CROSS, et al. | : | |

## ORDER

AND NOW, this 28th day of July, 2008, Independence Blue Cross's motion for sanctions (Document 24) in the amount of $33,928.05 in fees and $1,508.86 in costs is GRANTED against Cameron's Hardware, Inc., Frank Lobb, Jeffrey Lobb, and Lawrence M. Otter, Esquire. Joseph A. Frick's motion for sanctions (Document 24) is DENIED.

The Commonwealth of Pennsylvania Departments of Health and Insurance's motion for sanctions (Document 36) is GRANTED in the amount of $6,352.50 against Lawrence M. Otter, Esquire.

Payment shall be made within 30 days of the date of this Order.

BY THE COURT:

Juan R. Sánchez, J.